# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| R.J. POTVIN, III INVESTMENT TRUST, PATRICK O'REILLY, TRUSTEE <br><br> Plaintiff, <br><br> V. <br><br> AUBURN WATER DISTRICT <br><br> Defendant. | Docket No. 2:18-cv-00046-NT |

## AMENDED ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff R.J. Potvin, III Investment Trust ("**Potvin**" or the "**Trust**") brings this negligence and inverse condemnation action seeking compensation for damage to its real estate caused by a leaky water pipe owned by the Auburn Water District (the "**District**"). After removing the case from state court, the District has moved to dismiss the takings claim as unripe or subject to *Burford* abstention under Fed. R. Civ. P. 12(b)(6) "and/or" 12(b)(1) and the tort claim for a lack of supplemental jurisdiction. Def.'s Mot. 1 (ECF No. 4). For the reasons that follow, the case is **REMANDED** to state court.

## BACKGROUND

I accept all of the Plaintiff's well-pled allegations as true. For purposes of this motion none of the relevant facts are disputed.

The Plaintiff owns various properties, including at least one in Auburn, Maine. Compl. ¶¶ 6, 8 (ECF No. 3-3). In January of 2017, the Plaintiff became aware of a "serious ice build-up in the parking lot" of that property. Compl. ¶ 8. The Plaintiff

eventually contacted the District about "the ice situation." Compl. ¶¶ 11-12. The District sent employees to assess; they told Potvin that the problem was not the result of a water leak. Compl. ¶¶ 13-14. In July, Potvin asked the District's Director, Sid Hazelton, to come observe the ongoing problem at the scene. Compl. ¶ 20. Hazelton did so, ordered a water test, and discovered that the water on Potvin's property was indeed coming from the District's system. Compl. ¶ 20. He then ordered a road dug up to repair the broken water main causing the flows. Compl. ¶ 21.

In December, the Plaintiff brought suit in Maine Superior Court alleging that the District negligently allowed the flows from the broken water main to flood and damage its property (Count I), and that the flows amounted to a taking of the its flowage rights without the formality of eminent domain proceedings (Count II).[1] Compl. ¶¶ 23-27, 36-37. It seeks damages for the taking via 42 U.S.C § 1983 and for the District's negligence pursuant to the Maine Tort Claims Act. Compl. ¶¶ 31, 40. The Defendant removed the action on the basis of the federal takings claim. Notice of Removal ¶ 2 (ECF No. 1) (citing 28 U.S.C. § 1331).

## DISCUSSION

The Defendant argues the takings claim should be dismissed—not remanded—either because it is unripe or because of *Burford* abstention, and that I should then

---

[1] The Plaintiff also claims that the "taking of the [flowage] right and the actual flowage deprived" it "of property without due process of law in violation of the Constitution and laws of the United States and the State of Maine." Compl. ¶ 38. This allegation is contained under Count II, which otherwise appears primarily to be an inverse condemnation claim. To the extent the Plaintiff is also asserting federal and state due process claims, they are duplicative of its takings claim and do not alter the present disposition. *Cf. Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002) ("Dressing a takings claim in the raiment of a due process violation does not serve to evade the exhaustion requirement.").

2

decline supplemental jurisdiction over and dismiss—not remand—the tort claim. Def.'s Mot. 1; Def.'s Reply 3 (ECF No. 7). I consider these arguments in turn.

I. **The Takings Claim**

　A. **Ripeness**

The Fifth Amendment proscribes the taking of private property for public use without just compensation. In order to bring a regulatory takings claim in federal court, two ripeness requirements must be met: first, the governmental entity accused of the taking must have reached a final decision; and second, the property owner must have asked for and been denied just compensation. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). The plaintiff bears the burden of proving the two requirements have been met. *Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations*, 643 F.3d 16, 20 (1st Cir. 2011).

Where, as here, the claim is that the government entity *physically* took property, as opposed to doing so through regulation, "the final decision requirement is relieved or assumed because 'where there has been a physical invasion, the taking occurs at once, and nothing the [government actor] can do or say after that point will change that fact.'" *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 91 (1st Cir. 2003). But the second requirement, variously known as the state-exhaustion requirement, the state-litigation requirement, and the state-action requirement, must still be met. *See id.* At issue in this case is the second requirement.

To satisfy the state-litigation requirement, a takings plaintiff must "seek compensation through the procedures the State has provided for doing so."

*Williamson*, 473 U.S. at 194. "If the government has provided an adequate process for obtaining compensation, and if a resort to that process 'yields just compensation,' then the property owner 'has no claim against the Government' for a taking." *Williamson*, 473 U.S. at 194-95 (citations omitted).[2]

"An inverse condemnation cause of action is a classic example of such a particularized procedure; it gives a property owner aggrieved by government conduct the opportunity to obtain compensation, thereby avoiding an unconstitutional taking." *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 17 (1st Cir. 2007); *see also Tucker v. Town of Winterport*, 1 F.3d 1231 (Table), 1993 WL 312895, at *1 (1st Cir. July 29, 1993); *Lerman v. City of Portland*, 675 F. Supp. 11, 16 (D. Me. 1987), *aff'd*, 879 F.2d 852 (1st Cir. 1989).

Maine recognizes an inverse condemnation cause of action, which must be pursued in state court before the Plaintiff's federal takings claim is ripe. *Lerman*, 675 F. Supp. at 16 (citing *Foss v. Maine Tpk. Auth.*, 309 A.2d 339, 344 (Me. 1973)); *Drake v. Town of Sanford*, 643 A.2d 367, 369 (Me. 1994) (citing *Foss* and *Lerman*). Indeed, the Complaint, while not a model of clarity, appears to state a claim for inverse condemnation.[3] Because the Plaintiff *was* pursuing its takings claim in state court

---

[2] *Williamson* has been criticized for years for what some commentators have characterized as stripping federal courts of jurisdiction over constitutional takings claims under the guise of prudential ripeness concerns. *See Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 17-18 (1st Cir. 2007) (collecting articles). The Supreme Court has finally agreed to reconsider *Williamson*'s state-exhaustion requirement. *See Knick v. Twp. of Scott, Pa.*, 138 S. Ct. 1262 (granting cert. on this issue). The Court will hear the case next term. For now, *Williamson* remains the law.

[3] Although Count II is not styled as a claim for inverse condemnation, that claim appears to be factually supported by the allegations. Compl. ¶¶ 36-38. 2 James Wm. Moore, et al., Moore's Federal

4

before the Defendant removed the action, the question arises: what are we doing here? Why has the Defendant removed the action to federal court, only to file a motion that requires the Plaintiff to return to state court?

In pressing its *Williamson* argument, the Defendant points not to *Foss* and the other state inverse condemnation authorities, but to Maine statutory procedures that it says the Plaintiff must use before its claim ripens and that thus require dismissal and not remand. Def.'s Mot. 5-7, 10 (citing 35-A M.R.S. §§ 6501-6512, 6701-6706). The problem for the Defendant is that these procedures apply to *condemnation proceedings*, not *inverse condemnation proceedings*. The differences between these proceedings have been explained by the Supreme Court as follows:

> Although a landowner's action to recover just compensation for a taking by physical intrusion has come to be referred to as "inverse" or "reverse" condemnation, the simple terms "condemn" and "condemnation" are not commonly used to describe such an action. Rather, a "condemnation" proceeding is commonly understood to be an action brought *by* a condemning authority such as the Government in the exercise of its power of eminent domain. . . . The phrase "inverse condemnation" appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.

*Flores Galarza*, 484 F.3d at 16 n.19 (quoting *United States v. Clarke*, 445 U.S. 253, 255-57 (1980)); *see also Larrabee v. Town of Knox*, 744 A.2d 544, 545 n.3 (Me. 2000) (inverse condemnation is a "cause of action against a government agency to recover

---

Practice § 8.04 (3d. ed. 1997) ("Rule 8(a)(2) does not require a claimant to set forth any legal theory justifying the relief sought on the facts alleged, but does require sufficient factual averments to show that the claimant may be entitled to some relief."). Indeed, the Defendant acknowledges that the Plaintiff "asserts an inverse takings claim." Def.'s Mot. 2.

The Plaintiff was invoking the state court's concurrent jurisdiction to enforce both Federal and State constitutions and laws. It appears Maine state courts allow federal and state takings claims to proceed simultaneously. *See MC Assocs. v. Town of Cape Elizabeth*, 773 A.2d 439, 442-43 (Me. 2001). *But see Drake*, 653 A.2d at 369 (dismissing a federal takings claim as unripe where plaintiffs previously dismissed inverse condemnation claims with prejudice).

the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed" (citing Black's Law Dictionary 740 (5th ed. 1979))). "In other words, inverse condemnation affords compensation to a property owner when the government unconstitutionally takes his property in some indirect way." *City of S. Portland v. Maine Mun. Ass'n*, 953 A.2d 1128, 1130 (Me. 2008).

The statutes the Defendant cites all contemplate that some governmental body has initiated eminent domain proceedings.[4] The Defendant itself repeatedly refers to these statutes as "eminent domain procedures" or "procedure[s] for eminent domain." Def.'s Mot. 4, 5, 7. Eminent domain actions contemplate the formal transfer of title. *Cf.* 35-A M.R.S. § 6512(2) ("Failure to provide, in an act expressly conferring the right of eminent domain, for an act necessary to carry out the taking is a substantial error and the plaintiff shall be given judgment of title.").

The Defendant claims these procedures "are similar to the then-applicable Tennessee process described in *Williamson County*." Def.'s Mot. 5. And so they are, to a point. Like the Maine statutory scheme, they "outline[] the procedures by which government entities must exercise the right of eminent domain." *Williamson*, 473

---

[4] *See, e.g.*, 35-A M.R.S. § 6501(1) ("All locations made and all damages assessed for the taking of property by the exercise of the right of eminent domain shall be made and assessed and the rights of the parties shall be as stated in this chapter."); *Id.* § 6502(1) ("All property taken by eminent domain shall, before it is entered upon for any purpose except to make surveys, be located by a description, signed by the party taking the property."); *Id.* § 6503(1) ("The owners are entitled to damages for all property taken by eminent domain."); *Id.* § 6504(1) ("A person who petitions the county commissioners for the assessment of damages on account of property taken by eminent domain shall notify the adverse party of the time and place of the hearing."); *Id.* § 6702 ("The owner of the property, within 30 days after the beginning of condemnation proceedings, may file with the commission a petition for a decision as to the necessity of the appropriation."); *see also* Caspar F. Cowan & J. Gordon Scannell, Jr., 1 Maine Prac., Real Estate Law & Prac. § 16:3 (2d ed. 2017) ("The owner of property which is subject to being taken [under Title 35-A] may, within 30 days following the beginning of condemnation proceedings, file a petition with the Public Utilities commission for a decision as to the necessity of the taking.").

U.S. at 196. Unlike Maine's law, however, the Tennessee statutory scheme provided property owners recourse "if a government entity does take possession of the land without following the required procedures." *Id.* (citing Tenn. Code Ann. § 29-16-123).[5] The Maine procedures offer no such recourse. As noted above, they apply to takings accomplished *by eminent domain* in actions initiated by the state. They do not provide an inverse condemnation remedy, as this Court has previously recognized. *See Lerman*, 675 F. Supp. at 16 (noting, in December of 1987, that "Maine has no inverse condemnation statute like that relied upon by the Court in *Williamson*); Caspar F. Cowan & J. Gordon Scannell, Jr., 1 Maine Prac., Real Estate Law & Prac. § 16:3 (noting that Title 35-A of the Maine Revised Statutes, which sets out "a more nearly uniform set of eminent domain provisions," became effective July 1, 1987); *cf. Drake*, 643 A.2d at 369 ("Maine does allow inverse condemnation claims." (citing *Foss*, not Title 35-A)); *King v. Town of Monmouth*, 697 A.2d 837, 842 n.11 (Me. 1997) (noting favorable outcome of "state non-statutory inverse condemnation" proceeding).

The Plaintiff has alleged that "the Defendant did not exercise any formal eminent domain proceedings against [it] to obtain the flowage rights." Compl. ¶ 37. The procedures the Defendant points to are thus inapplicable here,[6] and it would not make sense to direct the Plaintiff to pursue this statutory "remedy" in the absence of

---

[5] The current language of § 29-16-123 reads in part as follows: "If, however, such person or company has actually taken possession of such land . . . the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or the owner may sue for damages in the ordinary way." Tenn. Code Ann. § 29-16-123(a).

[6] The provision cited by the Defendant that most closely appears to provide an inverse condemnation remedy is § 6503(2), which says that "[u]pon written application of either party made within 3 years after the taking, the county commissioners shall estimate the damages and the taker shall pay the damages." In context with the surrounding provisions, it is clear that these damages are available only for "property taken by eminent domain." § 6503(1).

a formal condemnation proceeding.[7] The Plaintiff needs to do exactly what the Plaintiff was doing before this case was removed to federal court—pursue an inverse condemnation proceeding in state court.

The Defendant claims that the failure to follow the state procedures requires me to dismiss the takings claim. Def.'s Mot. 10. The Defendant argues that the "First Circuit previously endorsed [dismissal] in circumstances identical to this" in *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 150 (1st Cir. 2002). Def.'s Reply 2. The circumstances of this case are hardly "identical" to *Deniz* for the obvious reason that this case was removed from state court while the plaintiff in *Deniz* filed his action in federal court to begin with. 285 F.3d at 146. Remand was not an option for the court in *Deniz*, but remand of the takings claims is an option for me and it is entirely appropriate here.[8]

### B. *Burford* Abstention

As an alternative to its ripeness argument, the Defendant argues that I should abstain from hearing the case under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and its progeny. *Burford* abstention would not be appropriate here because it is limited to "cases in which a federal court is asked to provide some form of discretionary relief."

---

[7] It is true that a plaintiff ordinarily bears the burden of showing that state remedies are " 'unavailable' or 'inadequate' " in order to be excused from the state-litigation requirement. *Downing/Salt Pond*, 643 F.3d at 22. But the issue at present is whether to remand or dismiss, not whether the Plaintiff is excused from the state-litigation requirement.

[8] I construe the Plaintiff's Response as a motion for remand. Pl.'s Resp. 2 (ECF No. 6) ("It goes without saying that Count I of the Complaint, which sounds solely in state law, should be remanded."). It was filed on February 21, 2018, which is within 30 days of the filing of the notice of removal (February 2, 2018) as required by 28 U.S.C. § 1447(c) for non-jurisdictional remands. Although there has been some confusion on this point, the *Williamson* ripeness requirements are (at present) not strictly speaking a matter of subject-matter jurisdiction. *See Perfect Puppy, Inc. v. City of East Providence, R.I.,* 807 F.3d 415, 420-21 (1st Cir. 2015) (*Williamson* requirements may be prudential rather than jurisdictional).

8

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). The Plaintiff seeks damages for the alleged taking. Compl. ¶ 30. There is nothing discretionary about that relief. *Cf. Sinclair Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 410 n.6 (9th Cir. 1996) (directing a lower court not to dismiss a takings claim on abstention grounds because, under *Quackenbush*, "federal courts can dismiss based on abstention only where the relief sought is equitable or otherwise discretionary"). *Burford* abstention thus could not support an outright dismissal here.

## II.   The Tort Claim

"[A] remand [of pendent state law claims] may best promote the values of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988). The values supporting a remand of pendent state law claims in *Cohill* support one in this case too, where prudential limitations require the substance of the Plaintiff's federal claim to be litigated in state court using a state law cause of action. Having remanded the takings claim, I decline supplemental jurisdiction over the tort claim and remand it as well. *See* 28 U.S.C. § 1367(c)(3); 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3739 n.121 & accompanying text (4th ed.). This would be appropriate even if the takings claim were being dismissed and not remanded.[9]

---

[9]   I note that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Whether the Defendant had an objectively reasonable basis for removal depends on how deeply one looks at the law. On the surface, the Plaintiff asserted federal claims that supported the removal. Scratch that surface, however, and one would see that the Plaintiff was required to raise its claim for inverse condemnation in the State courts. And one need scratch hardly at all to see there is no basis for opposing remand of the tort claim. It is unclear to me whether the Defendant's strategy here was based on a misreading of the law or something more manipulative. "The appropriate test for awarding

## CONCLUSION

For the reasons stated above, the case is **REMANDED** to state court.

SO ORDERED.

/s Nancy Torresen<br>
United States Chief District Judge

Dated this 25th day of May, 2018.

---

fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin*, 546 U.S. at 140. The Plaintiff has suggested that the Defendant's conduct is "designed to increase expense and cause delay," Pl.'s Resp. 1 n.1, but has not actually asked for costs. Nor has the Plaintiff done itself any favors with its perfunctory briefing, which itself has delayed disposition. Given how intimately removal and remand are bound up, I consider it a close question whether these constitute "unusual circumstances" justifying a fee award despite an objectively reasonable basis for removal, but I ultimately decline to make an award under § 1447(c).